Ejectment for a tract of land in N. Murderkill hundred, Kent County, containing forty-six and a half acres. The tract had formerly belonged to Aaron P. Osmond who with his wife had executed and acknowledged a deed of bargain and sale in fee simple for it, on the 20th day of April, 1861, for the consideration mentioned in it of $1000, to their son, Caleb Osmond, who was the real defendant in the action, but which was not recorded until the 27th day of May 1868, nor until after the death of the grantor, his father, which occurred on the 8th of May 1868. There was no proof of the delivery of it in the life time of the father, and which was denied by the plaintiffs. At the time of his death he was indebted to the amount of nine or ten thousand dollars, and among other creditors, to Maria Harley on a mortgage for $3000, recorded on the 25th day of March 1865, and to James Riddle on a mortgage for $4000, recorded on the 30th of November 1866, as well as to others in different amounts, some of them on judgments. He continued in possession of the tract in dispute, as well as other lands until the time of his death; and as it required all of his estate, both real and personal, to pay his debts, his administrator under an order of the *Page 88 
Orphans' Court obtained for that purpose and after due advertisement made, sold all his real estate including the tract in question at public sale, at which the plaintiffs became the purchasers of it, and which after the confirmation of the sale by that court, was conveyed to them by the administrator pursuant to the order of it, by deed of bargain and sale on the 26th of March 1869. Caleb Osmond, however, attended the sale of the administrator and gave public notice that he owned the tract, and of the deed under which he held it, and of his intention to continue to hold it, notwithstanding any sale the administrator might make of it.
Ridgely, (Draper with him) for the defendants, referred to the provision of the revised statutes in relation to the sale of lands by executors and administrators to pay the debts of their decedents, and that the grantee in any deed made in pursuance of such a sale shall take all the estate, title and claim which the deceased, at the time of his death bad to the real estate thereby conveyed, either in law, or in equity, and shall hold the same paramount to all incumbrances created, or suffered by, and all right and title of the devisees or heirs of the deceased, or his executors or administrators, and also of all the mortgages and recognizances entered into or executed by the deceased for the payment of money or interest absolutely c. Rev. Code 312,Sec. 8; and asked the court to charge the jury that the deed from the administrator of Aaron P. Osmond to the plaintiffs under that provision, could convey no other or better title to the tract of land in question than he himself had in it at the time of his death, but which he had sold and conveyed to his son some seven years before, and four or five years prior to the date of either of the mortgages executed by him to the creditors mentioned. But even if their mortgages had been given prior to the date of the deed to his son, the result would have been the same under that provision of the statute, for it would with all the rest of his land, then *Page 89 
or since owned by him, have been absolutely discharged from the lien of them, as well as of all the rest of his debts of every description mentioned in the evidence, by virtue of the sale of the administrator and his deed under it. It was, therefore, manifest that neither the mortgagees, nor any of the other creditors of the deceased were now interested in the question involved in this case as to who owned the tract of land then, or at the time of his death, or could now be at all affected by the result of the suit in one way or the other. And it was also equally manifest that no body but the purchasers of it at the administrator's sale, the plaintiffs in the action, were interested in it or could have any motive now for impeaching the validity of the deed from the deceased to his son, Caleb Osmond, by questioning the delivery of it to him, and which question was accounted for by the fact proved that he had had in the meanwhile no home but his father's house, and was away from that for a considerable time during the war, or upon the other ground that it was not recorded until six or seven years after it was executed and formally acknowledged, as had been proved by the Notary who took the acknowledgment, and not until after his father's death. But that objection, after all, could have no force or effect in such a case as this, because the statutory requirement for the recording of deeds only avoids a deed for the neglect to have it recorded within a year, as against a subsequent fair creditor, mortgagee, or purchaser for a valuable consideration, unless it shall appear that such creditor when giving the credit, or such mortgagee, or purchaser, when advancing the consideration, had notice of such deed. Rev. Code 269, Sec. 17. And it had been directly proved in this case that the plaintiffs not only had express notice of this deed on the day of sale, but were forewarned against bidding for, or buying the tract by the grantee of it himself by reason of it, and long before they consummated their purchase of it by paying the consideration for it to the administrator and the confirmation of the sale on the return of it by the Orphans' Court. *Page 90 
 Comegys, for the plaintiffs. If that was the correct construction and proper application of the statutory provisions referred to in such a case as this, and such had been generally understood, or even been supposed to be the meaning and effect of them by the persons attending it, what would this tract of land have sold for at the administrator' s sale? Not one cent, for nobody would have even made a bid for it. But suppose the deceased, Aaron P. Osmond, instead of deeding this part, had deeded the whole of his real estate to his son, Caleb Osmond, on the 20th day of April 1861, and the same had remained in his possession, or continued a secret unknown to the subsequent mortgages mentioned, or any of his creditors, and unrecorded until after his death on the 27th day of May 1868, what would any part, or the whole of it have sold for at the administrator's sale? Why, nothing, absolutely nothing, or in other words, it would not have sold at all, because if the construction which the counsel on the other side had given to the provisions of the two statutes referred to was correct, no purchaser at such sale could have taken one particle of title to his land as against his son, Caleb Osmond, and his secret, long concealed and but recently recorded deed under which he now claims the tract in question. And who would have been the losers by such a result as that? Why, his creditors alone, mortgagees and all, and practically his whole real estate would have necessarily descended to his heirs at law free and discharged from his debts, though left unpaid; because by the extraordinary operation of such a deed, and the still more extraordinary operation of the statutory provisions referred to and as contended for by the counsel on the other side, the legal title of the deceased to all his lands would practically in that case have passed entirely out of him to his son from the date of such deed, notwithstanding the two mortgages subsequently executed by him, one for three and the other for four thousand dollars, to creditors who had at the time no notice or knowledge whatever of the existence of such a deed, and not until after his death *Page 91 
which was two or three years after they were executed. But the very first section of the first statute referred to, makes not only the whole of the personal estate, but the whole of the real estate of every deceased person liable for all his debts, whether due by mortgage, recognizance, judgment, simple contract or otherwise, and specifically provides and directs that they shall be subject to be sold for the payment of all his debts, just as this tract was sold by the administrator of the deceased, and the proceeds of the sale being by law applicable in the hands of his administrator to the payment of all his debts, of course, all his creditors are especially interested in the sale of it, and of all the title he justly and lawfully held in it; and, as the primary, if not the sole object of the statute was for their exclusive benefit, the court would not allow that object to be totally and absolutely defeated in such a case as this by the unreasonable and absurd construction contended for on the other side, or allow the mortgagees particularly, to be practically, defrauded, and deprived of the benefit of the lien and the very preference designed to be secured to them by the section of the statute last cited by the counsel, against secret conveyances, or by any deed whatever executed before the mortgages and not recorded within one year after the sealing and delivery of it, and of which they had no notice when their mortgages were taken, because of the novel and peculiar facts and incidents which characterized this case, or the fortuitous circumstance merely that the deed was not revealed or discovered until after the death of their debtor, the grantor in it, and the sale of his lands for the payment of his debts had to be made through his administrator. Had the development of these facts and the sale of his land been made in his life time for the payment of the mortgages given after the date of it, or of the just debts of his creditors contracted subsequently to it, and without notice of it, there could be no question that in such a case the purchaser would have taken a clear and valid title to the tract in dispute as against his son under any such deed. *Page 92 
The deed, however, was void for another reason. There was no proof that it was ever actually delivered to the grantee by the grantor in his life time, and under all the facts disclosed in the case it was incumbent upon the grantee to affirmatively prove to the satisfaction of the jury that it was so delivered to him.
The Court,
That in the first place, so far as the formalities merely of the deed from Aaron P. Osmond and his wife to their son, Caleb Osmond, were concerned, they should be satisfied from all the evidence before them, under the facts and circumstances proved in regard to it on both sides, that it was not only signed, sealed, and duly acknowledged before a competent officer by the grantors named in it, but also that it was actually delivered by Aaron P. Osmond, the father, in his life time to Caleb Osmond, his son, and if they were not satisfied of that fact from all the evidence which had been produced in the case, it would be sufficient of itself to determine it, and their verdict should be for the plaintiffs. But if they should be satisfied of that essential fact in the case, then the court was bound to say to them upon the question of law purely which had been raised and discussed by the counsel in relation to the construction, operation and effect of such a deed, which it was admitted had not been recorded until more than seven years after the date of it, and of the provisions of the statues referred to in regard to it, that if they were satisfied from the evidence that the mortgages executed after the date of it to Maria Harley and to James Riddle, by the deceased, Aaron P. Osmond, were taken by them without any knowledge of that deed until afterward, or that any of the other debts standing against him at the time of his death, and for the payment of which his administrator was authorized by the Orphans' Court to sell his real estate, and for the payment of which he did sell it pursuant to that authority, were contracted by him after the date of that deed with such creditors, and *Page 93 
that they were fair creditors of his and had no knowledge or notice of it until after such debts were so contracted, then and in that case also their verdict should be for the plaintiffs; for if such were the facts of the case, the deed would be in contravention clearly of the manifest design and policy of the statute providing for the sale of the real estate of deceased persons by their executors or administrators for the payment of their debts, and the provision of the statute referred to requiring a deed to be recorded in the proper office within one year after the sealing and delivery of it, if it was not strictly contrary to the literal terms of those statutes; and it would consequently be null and void and of no effect as against the mortgagees mentioned and the other-creditors of the deceased for the payment of whose debts the tract of land in question was so sold as a part of his real estate by his administrator and was purchased by the lessors of the plaintiff, because Caleb Osmond, the grantee in it, could take no title by it from his father, Aaron P. Osmond, the grantor in it, under such circumstances, that would avail against such mortgages and creditors of the latter, for the payment of whose debts it was sold to the lessors of the plaintiffs by his administrator pursuant to the order and decree of the Orphans' Court made for that purpose; for under that decree and by force of the statute they take directly all the estate, title and claim which the deceased at the time of his death had to the tract in question, and which, of course, at that time was complete and absolute so far as this case is concerned, if the deed to his son was null and void as agianst his creditors for the reasons stated. If, however, the jury should not be satisfied from the evidence that such were the facts in the case, then their verdict should be in favor of the defendants.
 The plaintiffs had a verdict. *Page 94